UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

Joseph Miller,

    Debtor.

Case No. 12-32487-mdm

Chapter 11

Layton State Bank,

    Plaintiff,

v.

Joseph Miller,

    Defendant.

Adversary Case No. 13-02045-mdm

**DEFENDANT'S COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

Now comes Joseph G. Miller, by his attorneys, The Law Offices of Jonathan V. Goodman, by Derek H. Goodman and Jonathan V. Goodman, and alleges his Counter-Claims against the above-named Plaintiff:

**NATURE OF COUNTER-CLAIMS**

1. This is an action by the Defendant/Debtor for an Order entering judgments against the above-named Plaintiff for lender liability.

2. Defendant reiterates paragraphs 1, 2, 4, 5, 6, 7, and 8, of the Complaint but does not attach any guarantee.

**FACTS**

3. On July 1, 2011, the Defendant received notice from the Plaintiff that due to his default with respect to the loan from the Plaintiff, the Plaintiff would take over rental collections of the Miller Ridge Apartments. Plaintiff also informed Defendant that Ryco LC ("Ryco") would be responsible thenceforth

Law Offices of Jonathan V. Goodman
788 N. Jefferson Street, Suite 707
Milwaukee, WI 53202
414-276-6760; 414-287-1199 (facsimile)
jgoodman@ameritech.net

for rental collection at Miller Ridge on behalf of the Plaintiff. According to Plaintiff, Ryco was to then deposit those payments in an account at Citizens First Bank.

4. Once Ryco took over control of the rent collections at the Miller Ridge Apartments, at the behest of the Plaintiff, severe management and disbursements problems began. On July 1, 2011, Ryco delivered letters explaining where rental payments should be submitted but only approximately one-half of the tenants at Miller Ridge received such letters. Consequently, many tenants did not pay rent, or did not pay rent in a timely matter. Ryco did not hand any late notices out for non-payment of rent. Ryco did not properly record the rental payments that were received, nor was a current rent roll ever provided to Miller Ridge staff. Plaintiff failed to authorize or pay in a full or timely manner many of the utility bills, as well as insurance and payroll.

5. On September 30, 2011, Plaintiff terminated its agreement with Ryco as a result of non-payment of rents and poor collections practices, and other negligent and unsatisfactory acts of Ryco.

6. On September 30, 2011, Plaintiff entered into an agreement with Defendant to have all rental payments issued directly to Plaintiff. Under the agreement, Plaintiff would receive all rental payments. Pursuant to the agreement, Plaintiff was to pay operating expenses associated with the Miller Ridge Apartments, including, but not limited to, payroll, utilities, electricity, water, garbage collection, insurance, and other related costs and expenses.

7. Once Plaintiff began collecting rent, Plaintiff failed to make full or timely payments of Miller Ridge's various debts and bills including taxes and utilities, but the Plaintiff made sure itself was paid.

8. On several occasions, Plaintiff failed to pay Miller Ridge's electricity bill, causing Alliant Energy to shut off Miller Ridge's electricity.

9. On July 20, 2012, Defendant notified Plaintiff that the Clinton, Iowa City Attorney had contacted the Defendant expressing concern regarding unpaid vendors and shut off notices, in addition to the rapidly deteriorating state of the Miller Ridge Apartments over the period of July 2011 to July 2012.

10. On October 21, 2011, a fire occurred at the Miller Ridge Apartments, which resulted in the six units being unavailable for rentals. By failing to pay the insurance premiums, Plaintiff caused Miller Ridge's insurance to lapse, and as a consequence, there were no insurance proceeds available to pay for the substantial damages exceeding $100,000.00. As a result these six units remain unrehabilitated, unrentable, and there were no insurance proceeds to pay the premiums to pay the cost of repairing the units, and rental income was lost because there was no rental interruption insurance.

## FIRST CAUSE OF ACTION: FIDUCIARY DUTY

11. Plaintiff, as a commercial lender, owes Defendant, as a guarantor, a fiduciary duty due to the existence of a confidential relationship between the parties. A confidential relationship is created when the guarantor's trust is reposed in the lender, resulting in the lender's superiority and exercise of influence.

12. Plaintiff had reason to know of Defendant's trust and confidence, and violated that trust and confidence by exceeding its right in an ordinary commercial transaction, by taking control of the Miller Ridge business, including rent collection, disbursement, and power of payment of creditors. By taking over the collection of rent, payment of expenses, and by assigning management of the property first to Ryco, and then essentially in itself, Plaintiff took over control of and management of the business of Miller Ridge Apartments.

13. Plaintiff's management and control of Miller Ridge resulted in substantial harm to the Miller Ridge Apartments, and to Defendant's Bankruptcy estate, causing Defendant and his estate, damages of over $1,000,000.00.

## SECOND CAUSE OF ACTION: LENDER LIABILITY

14. Defendant reiterates and realleges paragraphs 1 through 13.

15. Plaintiff has dominated and controlled Defendant and Miller Ridge causing damages to Defendant and his creditors.

16. Plaintiff's actions caused Defendant and his creditors damages in excess of $1,000,000.00.

## THIRD CAUSE OF ACTION: PLAINTIFF IS LIABLE FOR DAMAGES AS THE CONTROLLING PERSON OF THE DEFENDANT

17. Defendant reiterates and realleges paragraphs 1 through 16.

18. Under 15 U.S.C. § 78(t)(a), Plaintiff is the "controlling person" in that it acted as the "controlling person" of the Miller Ridge Apartments through its collection of rents, disbursements for expenses, and through its control of Miller Ridge and its finances.

19. As the "controlling person," Plaintiff is liable for damages to Miller Ridge and to the Defendant in the sum of in excess of $1,000,000.00.

## FOURTH CAUSE OF ACTION: EQUITABLE SUBORDINATION OF DEFENDANT'S MORTGAGE ON 535 ELMHURST, IN DELAVAN, WISCONSIN ("DELAVAN PROPERTY")

20. Defendant reiterates and realleges paragraphs 1 through 19.

21. Pursuant to 11 U.S.C. § 510(c), under principles of Equitable Subordination, the Bankruptcy Court may subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim.

22. Plaintiff has a secured claim on the Delavan Property in the sum of approximately $430,000.00 (the "Delavan Claim").

23. Plaintiff's Claim on the Delavan Property should be subordinated to the claims of the Unsecured Creditors in these proceedings because:

    a. Plaintiff engaged in inequitable conduct by taking control of the Miller Ridge Property, thereby destroying an asset of the Defendant's estate; and

    b. Plaintiff's misconduct resulting in injury to the property of this estate and conferred an unfair advantage to itself.

## FIFTH CAUSE OF ACTION: BREACH OF DUTY OF GOOD FAITH

24. Defendant reiterates and realleges paragraphs 1 through 23.

25. Pursuant to Wis. Stats. § 401.203, the Plaintiff had a duty of good faith in its performance under its loan documents and enforcement thereof.

26. Plaintiff breached this duty of good faith as alleged in the previous paragraphs.

27. Because of the egregious breaches of the Plaintiff's duties of good faith and fair dealing, Plaintiff's breach caused Defendant damages in an amount in excess of $1,000,000.00.

WHEREFORE, the Defendant demands judgment against the Plaintiff as follows:

1. For dismissing the Adversary Complaint in total;

2. For judgment on the First, Second, Third, and Fifth Causes of Action, in the amount of damages the Defendant alleges exceeds $1,000,000.00.

3. For equitable subordination of the Plaintiff's mortgage on the Delavan Property pursuant to 11 U.S.C. § 510(c) to the claims of the Defendant's Unsecured Creditors; and

4. For such other and further relief as the Court deems just and equitable, and costs and expenses of litigation.

Dated this 1st day of March, 2013.

          LAW OFFICES OF JONATHAN V. GOOD
          Attorneys for Joseph G. Miller

          _____/s/ Jonathan V. Goodman_____

P.O. Address
Law Offices of Jonathan V. Goodman
788 N. Jefferson Street, Suite 707
Milwaukee, WI 53202
414-276-6760; 414-287-1199 (facsimile)
jgoodman@ameritech.net