UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

JOSEPH G. MILLER,

        Debtor.

_____

LAYTON STATE BANK,

        Plaintiff,

v.

JOSEPH G. MILLER,

        Defendant.

Case No. 12-32487

Chapter 11

Adversary No. 13-2045

_____

MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS
_____

      On August 22, 2012, the debtor filed his individual chapter 11 petition. The bank initiated this adversary proceeding on January 15, 2013, by way of a complaint seeking a determination that the debtor's obligation to the bank under his guaranty is nondischargeable under 11 U.S.C. § 523(a)(2). Damages under any deficiency have not been determined as there has been no foreclosure and sale as yet. In addition to his answer to the nondischargeability complaint, the debtor filed counterclaims against the bank, including breach of fiduciary duty, lender liability, controlling person,[1] equitable subordination, and breach of duty of good faith. The creditor moved to dismiss the counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This Court has jurisdiction over this matter

---

[1] Regarding the third counterclaim – Controlling Person, which is based upon the Securities Exchange Act of 1934 – the debtor agrees that he does not hold such a claim, and it will be dismissed.

pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C) and (I). For the reasons stated below, the plaintiff's motion to dismiss the counterclaims is granted.

BACKGROUND

Unless otherwise noted, the relevant facts are either not in dispute or assumed to be true for purposes of the bank's motion to dismiss the debtor's counterclaims.

Miller Ridge, LLC – a company controlled by the debtor, Joseph Miller – and Layton State Bank entered into a Construction Loan Agreement on November 19, 2007, with the limited liability company executing a Promissory Note to the bank. Other loan documents were also executed by Miller Ridge at the same time, including a Construction Mortgage, an Assignment of Rents, and a perfected Commercial Security Agreement. Miller Ridge acquired title to the Miller Ridge Apartments in Clinton, Iowa, with the proceeds of the loans made by the bank, which also funded in part the rehabilitation of that apartment complex. The bank advanced additional funds to Miller Ridge and renewed the loans as they matured.

As additional security for the Note, the debtor executed a Guaranty, which provided:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

(Commercial Guaranty, *Continuing Guarantee of Payment and Performance*, dated November

19, 2007). The Guaranty also provided the following waiver of rights:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceeds against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.
>
> Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

(Commercial Guaranty, *Guarantor's Waivers*, dated November 19, 2007).

In 2011, because Miller Ridge had defaulted under the Note and Mortgage, and real estate taxes were past due, Layton Bank exercised its rights under the Assignment of Rents. The bank engaged a third party, Ryco, to collect rent payments for the apartment complex. According to the debtor, on July 1, 2011, Ryco delivered letters explaining where rental payments should be submitted but only approximately one-half of the tenants at Miller Ridge received such letters. Consequently, many tenants did not pay rent or did not pay rent in a timely

3

Case 13-02045-gmh    Doc 24    Filed 07/09/13    Page 3 of 13

manner. Allegedly, Ryco did not properly record the rental payments that were received and failed to provide Miller Ridge staff with a current rent roll. Furthermore, while under the management control of the bank, utility bills, insurance and payroll were either not paid in full or paid untimely.

On September 30, 2011, the bank terminated its agreement with Ryco and instead entered into a Rent Collection and Blocked Account Agreement with the debtor. Under the agreement, the bank would receive all rental payments, and pay the apartment complex's operating expenses, including payroll, utilities, electricity, water, garbage collection, and insurance. Nevertheless, according to the debtor, once the bank began collecting rent, it failed to make full or timely payments of Miller Ridge's various debts, including taxes, insurance and utilities. At one point, Alliant Energy shut off the complex's electricity due to unpaid utility charges.

On October 21, 2011, a fire occurred at the Miller Ridge Apartments, which resulted in damages exceeding $100,000, and six units being unavailable as rentals. The debtor alleges that, due to the bank's failure to pay the insurance premiums, insurance coverage lapsed, and there were no insurance proceeds available to pay for the damage or lost rental income. The six units remained unrentable as of the filing of this adversary proceeding. Subsequently, the city attorney notified the debtor, expressing concern regarding unpaid vendors and shut off notices, in addition to the rapidly deteriorating state of the Miller Ridge Apartments over the period of July 2011 to July 2012.

Shortly before the filing of the bankruptcy petition, Miller Ridge, LLC, conveyed title to the Miller Ridge Apartments via deed to the debtor, Joseph Miller. Since there is no allegation to the contrary, it appears that Miller Ridge, LLC, continues to remain in existence.

ARGUMENTS

The bank points out that the debtor is not liable under the Notes and Mortgages, but under a separate contract, the Commercial Guaranty executed on November 19, 2007. Consequently, the debtor is liable pursuant to the terms of that contract, not for the debt itself. *See Bank Mut. v. S.J. Boyer Constr. Inc.*, 2010 WI 74, ¶¶ 53-54, 326 Wis. 2d 521, 550, 785 N.W.2d 462. A guarantor can only sue (or defend) for direct harm to itself resulting from the contractual relationship to which it is a party, and the debtor was not a party to the loan. The claims asserted by the debtor based upon lender liability and breach of duty of good faith relating to acts allegedly taken by the bank following the default by Miller Ridge on the loans, are claims of the LLC, not the guarantor, Mr. Miller. Any harm to the debtor is derivative of the alleged harm to Miller Ridge and, as such, any resulting claims must be brought by Miller Ridge. *Krier v. Vilione*, 2009 WI 45, ¶ 31, 317 Wis. 2d 288, 766 N.W.2d 517. Additionally, the debtor specifically waived any right to bring a counterclaim pursuant to the terms of the Commercial Guaranty. *Cf. Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 886 (7th Cir. 2005).

More specifically, the bank argues that the debtor's counterclaim for breach of fiduciary duty should be dismissed. Generally, a fiduciary duty does not exist as a matter of law between a creditor and a guarantor. *Production Credit Ass'n v. Croft*, 143 Wis. 2d 746, 751, 423 N.W.2d 544, 546 (Ct. App. 1988). A fiduciary relationship arises out of a commitment, whether express or implied, to act for the benefit of another, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605, 609 (1985), and the Commercial Guaranty did not provide for any benefit or protection for Mr. Miller. The bank was acting in its own interests. The Guaranty created an obligation on Mr. Miller which was unlimited, unconditional, and continuing until the loan was paid in full. Additionally, the Guaranty specifically waived protections or defenses which the Guarantor might otherwise claim under common law. Mr.

5

Case 13-02045-gmh    Doc 24    Filed 07/09/13    Page 5 of 13

Miller only alleged that the lender/guarantor relationship was a "confidential relationship," not that there was any inequality, weakness of age or mental strength or any condition giving the bank an advantage over the guarantor.

The bank further argues the debtor's counterclaim for lender liability and breach of duty of good faith should be dismissed because all actions complained of were specifically authorized by the documents between the bank and Miller Ridge. The debtor does not allege that the actions were unauthorized, merely that they were performed unsatisfactorily.

Finally, the bank argues the debtor's counterclaim for equitable subordination should be dismissed, as well. Under the doctrine of equitable subordination, the debtor must show that the bank engaged in inequitable conduct, the conduct resulted in an injury to the debtor or gave the bank an unfair advantage, and the subordination is consistent with the provisions of the Bankruptcy Code. The allegations of misconduct contained in the counterclaim describe nothing more than a lender exercising its rights under its loan document; there is no allegation of any deceptive, fraudulent or misleading activities on the part of the bank. Additionally, the bank was entitled under the Assignment of Rents and Blocked Account Agreement to all of the rents collected.

The debtor argues that the bank's conduct caused a substantial portion of the property's diminution in value between the initiation of the loan and July 2012. Generally, "an 'injury' to the guarantor includes an injury to the guarantor's subrogation rights." 38 Am. Jur. 2d *Guaranty* § 70. While the contract of guaranty does not carry with it a fiduciary duty of the lender to the guarantor, it does "with regard to impairment of collateral," 38 Am. Jur. 2d *Guaranty* § 74, because the impairment of collateral increases the monetary liability of the guarantor. Although the Seventh Circuit has held that "shareholders, creditors, managers, lessors, suppliers, and the

6

like cannot recover on account of injury done to the corporation," *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1335 (7th Cir. 1989), the debtor in this case is not seeking claims that are derivative of the principal obligor, Miller Ridge, LLC. The debtor is seeking claims in his own right. The debtor notes that if he cannot make allegations against the bank because, as the non-obligor, he does not have standing, then the bank cannot bring its cause of action based upon alleged false financial statements against him because those statements were not made by the principal obligor, Miller Ridge, LLC.

In the alternative, in the event the counterclaims are deemed derivative, the debtor argues the claims, particularly the equitable subordination claim, survive the motion to dismiss. Taking the allegations in the counterclaims as true – that the bank took control of the property, collected all the rents, made sure that it got paid, while not paying the expenses that were necessary in order to keep the property occupied and the tenants satisfied – establishes a cause of action of "excessive lender control or influence" which places the lender in a fiduciary capacity. *See In re Auto Specialties Mfg. Co.*, 153 B.R. 457, 479 (1993). And if a fiduciary relationship is not proven, egregious conduct may ultimately be demonstrated by the lapse of insurance on the collateral. By destroying the value of its own collateral, the bank necessarily increased the amount of the debtor's guaranty liability.

While the guaranty contains many waivers, it does not specifically waive the debtor's right to pursue Miller Ridge's causes of action. And it does not specifically waive the right to pursue a cause of action for the bank's breach of duty of good faith.

DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The court must assume the veracity of any well-pleaded factual allegations in the complaint – in this instance the defendant's counterclaims – and draw all inferences in the pleader's favor. *Id*. at 679.

The debtor claimed in count one that Layton State Bank was liable for breach of fiduciary duty. Under Wisconsin law, the relationship between a lender and a guarantor, without more, does not establish a fiduciary relationship. Instead, a fiduciary relationship must arise from a formal commitment to act for the benefit of another, such as a trustee's commitment to a beneficiary, or from special circumstances from which the law will assume that such an obligation exists. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis.2d 127, 136, 377 N.W.2d 605, 609 (1985). There are no alleged facts to show that a fiduciary relationship arose in this case; the debtor's relationship with the bank was an arms' length, lender-guarantor business relationship, not one of trust and confidence. Therefore, the debtor's counterclaim for breach of fiduciary duty must be dismissed.

In the debtor's second cause of action for lender liability he alleged that the bank "dominated and controlled Defendant and Miller Ridge causing damages to Defendant and his creditors." Because the bank did not *lend* the money to the debtor, the debtor's claim under lender liability must be dismissed.

The third counterclaim, controlling person, will be dismissed upon the defendant's agreement.

The fourth counterclaim, subordination of the bank's claim against the Delavan Property to unsecured creditors is related to the bank's conduct with respect to Miller Ridge and is tied to whether the next counterclaim can go forward.

This bring us to the debtor's fifth counterclaim, breach of duty of good faith. The Court notes that a guaranty may be one of several types: absolute or conditional, a guaranty of payment or collection, a general, special, continuing or unlimited guaranty, or a letter of credit. *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 677, 273 N.W.2d 279, 282 (1979) (citing 38 C.J.S. *Guaranty* § 7). An examination of the relevant portions of the subject guaranty discloses that it is an absolute guaranty of payment, as distinguished from a conditional guaranty of collection. Under applicable Wisconsin law, the guarantor's liability under a guaranty of payment is absolute, even if the impairment of the collateral was caused by the creditor's negligence or lack of due diligence. *United States By and Through Barnes v. Klebe Tool & Die Co.*, 5 Wis. 2d 392, 397, 92 N.W.2d 868, 871 (1958).

Under normal circumstances, wrongs done the borrower cannot be brought by a guarantor as the claims of the guarantor are "derivative." *See Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333 (7th Cir. 1989). The general rule is that, "[a] guarantor may assert the independent claim of the principal debtor to set off a creditor's claim against the guarantor where the guarantor has taken assignment of the claim or the principal has consented to guarantor's use of the claim; both principal and surety are joined as defendants; or the principal is insolvent." 38A C.J.S. *Guaranty* § 127 (updated June 2103); *see also Continental Group, Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982); *First Texas Serv. Corp. v. Roulier*, 750 F. Supp. 1056, 1061 (D. Colo. 1990); Restatement (First) of Security § 133(2) (1941). The guarantor's right to assert the principal's claims under these exceptions is in the

9

nature of setoff against the creditor's claim on the guaranty; the guarantor may not recover affirmatively. *See Continental Group, Inc.*, 536 F. Supp. at 662. Thus, if the guarantor's recovery on his counterclaims exceeds his liability under the guaranty, the guarantor may not recover this excess. *Id*.

Here, no independent acts against the debtor alone are alleged; all alleged wrongs were to Miller Ridge, LLC, and thus are derivative as to the debtor. Miller Ridge, LLC, did not assign its causes of action to the debtor; it only deeded over the real estate. Miller Ridge, LLC, is not dissolved, even though its sole member has filed a bankruptcy case. *See Wis. Stats.* §§ 183.0802(1)(d)2. & 183.0901.[2] Insolvency of the LLC is not pleaded as a basis for the counterclaim. Accordingly, none of the exceptions to the general rule are met, and the debtor's claims are derivative of his LLC.

Nevertheless, the Wisconsin courts have recognized exceptions to the general rule prohibiting guarantors from defensively raising claims of the principal debtor against a creditor in instances of fraud or bad faith by the creditor. *See, e.g., Crown Life Ins. Co. v. LaBonte*, 111 Wis. 2d 26, 43-44, 330 N.W.2d 201, 209 (1983) (bad faith not found in creditor's failing to foreclose while property deteriorated); *see also Portage County Bank v. Deist*, 159 Wis. 2d 793, 801, 464 N.W.2d 856, 860 (Ct. App. 1990) (absolute guaranty enforceable absent bad faith; bad faith not pleaded).

This Court is mindful of *Park Bank v. Westburg*, 2013 WI 57, __ N.W.2d __, 2013 WL 3335042 (2013), decided after the matter was briefed. The Wisconsin Supreme Court affirmed

---

[2]An event of dissociation, such as the filing of a voluntary bankruptcy petition by a member, results in automatic dissolution only for an LLC that was organized before October 1, 2002, which is not the case here. Also, if there is an operating agreement with an applicable provision, it was not placed in evidence.

10

the lower court's dismissal of the guarantors' derivative counterclaims. The guarantors' alleged injuries were secondary to those of their business and arose as a result of the lender's conduct toward the company before, during, and after it entered receivership. The court discussed stockholder derivative actions and pointed out that in some instances – not met in that case – the owners or stockholders in a corporation that has the primary injury could sue on behalf of the corporation. However, guarantors cannot bring derivative actions, at least in their capacity as guarantors. *Id*. at ¶43 (citing *Rose v. Schantz*, 56 Wis.2d 222, 201 N.W.2d 593 (1972)). In this case also, the primary injury was to the corporation, and that made the injury to the debtor, secondary.

Fraud has not been pleaded in this case, so we are left with the debtor's alleged claim for breach of duty of good faith under general contract law. In Wisconsin,

> common law imposes a duty of good faith on the creditor in his dealings with the guarantor. [T]he creditor owes a surety a duty of continuous good faith and fair dealing[.] This rule applies equally to the relationship between a creditor and a guarantor. This is simply a recognition of the basic principle of contract law that the obligation of good faith is an implied condition in every contract.

*Crown Life Ins. Co. v. LaBonte*, 111 Wis. 2d 26, 43-44, 330 N.W.2d 201, 209 (1983) (citations omitted).

The bank points out that the "Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of ... any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness." (Commercial Guaranty, *Guarantor's Waivers*, dated November 19, 2007). The allegations pleaded would fall under the category of "unjustified impairment of any collateral," particularly failure to pay utilities and insurance premiums, resulting in substantial damage. Since the bank is acting in its own interests to

11

maximize recovery under the note, the question becomes whether such conduct violates the general contract obligation of good faith vis-a-vis a separate agreement with the guarantor.

While there appears to be a dearth of Wisconsin law on this issue, *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 796, 541 N.W.2d 203 (Ct. App. 1995), recognized that "a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled." As the supreme court has stated:

> "it may be said that contracts impose on the parties thereto a duty to do everything necessary to carry them out.... Moreover, there is an implied undertaking in every contract on the part of each party that he [or she] will not intentionally and purposely do anything to prevent the other party from carrying out his [or her] part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counter-promise against arbitrary or unreasonable conduct on the part of the promisee."

*Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 35, 291 Wis.2d 393, 415, 717 N.W.2d 58, 69 (citing *Ekstrom v. State*, 45 Wis. 2d 218, 222, 172 N.W.2d 660 (1969)).

Do the pleaded facts regarding damage to the property raise an inference of bad faith as a separate, independent obligation under the separate guaranty? This Court holds that they do not. The rule implying a covenant of good faith conduct in all contracts is intended as a guarantee against "arbitrary or unreasonable conduct" by a party. The Wisconsin Court of Appeals in *Foseid v. State Bank of Cross Plains*, noted:

> "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."

197 Wis. 2d 772, 796-97, 541 N.W.2d 203, 213 (Ct. App. 1995) (quoting Restatement (Second)

Case 13-02045-gmh    Doc 24    Filed 07/09/13    Page 12 of 13

of Contracts § 205 cmt. d).

Once the loan was made, the bank had no further duty *under the Guaranty* to act in any way or to render any further performance. There is no evasion of the spirit of the bargain as it was always intended by the agreement that full payment was due by the guarantor, and all defenses were waived. There was no rendering of imperfect performance by the bank vis-a-vis the guarantor; the full amount of the loan was made to the LLC. No abuse of power as to terms was pleaded, and the bank did not interfere with the *guarantor's* obligation to pay.

As the Seventh Circuit Court of Appeals observed in *Mid-State Fertilizer*, 877 F.2d at 1335, the fortunes of the guarantor may rise and fall along with the success of the principal, but that does not give the guarantor the right to raise the principal's defenses, nor does it constitute a breach of the contract the bank had already performed completely. The same outcome occurred in *Park Bank v. Westberg,* 2013 WI 57, in spite of other actions by the bank against the guarantors to enforce the guaranty. The guarantor lacks standing to raise the borrower's defenses, and he has specifically waived any such right. Holding the debtor to his bargain does not constitute bad faith by the bank.

Based on the foregoing, the plaintiff's motion to dismiss the debtor's counterclaims is granted as to all five counterclaims. A separate order consistent with this decision will be entered.

July 9, 2013

                                          Margaret Dee McGarity
                                          United States Bankruptcy Judge